FILED

2023 Apr-19  PM 03:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **MIREKKA S. POKE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 7:22-cv-00660-RDP** |
| | } | |
| **KILOLO KIJAKAZI, COMMISSIONER** | } | |
| **OF SOCIAL SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OF DECISION

Plaintiff Mirekka Shenille Poke brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") to deny her claims for a period of disability and disability insurance benefits ("DIB") under the Act. *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the Commissioner's decision is due to be affirmed.

**I.      Proceedings Below**

**a.      Procedural History**

Plaintiff applied for a period of disability and DIB on May 10, 2020, alleging she had become disabled on February 28, 2020. (R. 12). Plaintiff's claim was initially denied on August 18, 2020, and again upon reconsideration on March 4, 2021. (*Id.*). A hearing was held on November 4, 2021 before an Administrative Law Judge ("ALJ"). (*Id.*). In her December 3, 2021 decision, the ALJ determined Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act and therefore ineligible for a period of disability and DIB. (R. 25). The ALJ reached this decision after considering Plaintiff's age, education, work experience, and residual functional

capacity ("RFC"). (*Id*.). The ALJ determined Plaintiff is capable of performing the requirements of certain unskilled sedentary occupations. (R. 24). Plaintiff requested review of the ALJ's decision, but the Appeals Council denied her request on April 29, 2022, finding no basis for review. (R. 1). Plaintiff timely filed this civil action seeking this court's review. (Pl. Br. at 1).

### b.       Facts

Plaintiff was 39 years old on her alleged onset date of February 28, 2020. (R. 86). Plaintiff previously worked as a Registered Nurse and as an adjunct clinical instructor at a local university. (R. 37-38). However, Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (R. 14). Plaintiff alleges that the following impairments prevent her from working: chronic back pain, left hip and SI joint pain, degenerative disc disease, muscle spasms of the lower back, decreased hearing, generalized anxiety disorder, major depressive disorder, attention deficit disorder, and headaches. (R. 51, 86).

### i.       The Hearing

On November 4, 2021, Plaintiff appeared before the ALJ. (R. 32). Plaintiff's counsel and Tricia Oaks, a vocational expert ("VE") were also present during the hearing. (R. 32). Plaintiff testified that she is in constant pain that worsens with activity. (R. 40). She claimed that her back/SI joint pain prevents her from sitting for long periods of time and that daily household chores like sweeping, mopping, and picking up laundry baskets cause her extreme pain. (*Id*.). Plaintiff testified her low back/SI joint pain also cause a burning sensation and numbness that radiates down her left buttock. (R. 41). However, Plaintiff also testified that she still sweeps and mops, washes dishes, cooks about once a week, and washes laundry about twice a week. (R. 40-41). Plaintiff underwent surgery on her left hip two months prior to her hearing with the ALJ. (R. 42). She acknowledged that the surgery helped, but claimed she still experiences sharp, stabbing pain when sitting a certain

way or after prolonged sitting. (*Id*.). Plaintiff also stated daily activities cause her hip pain to worsen. (R. 44).

Plaintiff also complained of worsening anxiety, depression, headaches, and attention deficit disorder. (R. 45-51). Plaintiff asserted that her anxiety causes hand tremors, heart palpitations, and upset stomach when she has to leave her house. (R. 45). However, as of the date of the hearing, Plaintiff's cardiac workup was normal. (*Id*.). Plaintiff also said she suffered from depression, decreased desire to be around people, feelings of isolation, and lack of motivation to care for herself (*e.g.*, shower or brush teeth). (R. 49). Plaintiff claimed she experiences painful headaches about twice a week, which last at least four hours each time, and reach level 10 on a 1 to 10 pain scale. (R. 50). Plaintiff also reported that attention deficit disorder prevents her from maintaining her household, keeping up with light chores, and paying bills. (R. 49). Plaintiff was prescribed Ritalin by a treating physician to address her concentration issue. (R. 50). Plaintiff told the ALJ that the medicine helps with her attention issues, but also makes her jittery. (*Id*.). Plaintiff said that on average she takes two doses a day instead of the prescribed three doses a day. (*Id*.).

During the hearing, the ALJ questioned Plaintiff about her functional capacity and day-to-day activities. (R. 52). Plaintiff testified she could lift a gallon of milk but could not lift a 20-pound bag without pain; could stand no more than ten minutes at a time; could walk no more than eight minutes at a time; and could sit no more than thirty minutes at a time. (R. 52- 53). Plaintiff said she shops in stores about once a week, but usually has her groceries delivered. (R. 53). The ALJ asked Plaintiff to describe what a normal day looks like for her. (*Id*.). Plaintiff indicated she wakes up early to get her daughter ready for school, spends most of the day laying down, and gets up only when needed to let her dog out or make a sandwich. (R. 54).

The ALJ posed various hypotheticals with a list of initial limitations to the VE, and asked whether jobs exist requiring light work but with the ability to alternate between sitting and standing at 45-minute intervals for a duration of five minutes while remaining on task. (R. 62). The VE found three occupations that meet these requirements. (R. 62-63). The ALJ then asked whether the same jobs exist with an added requirement of occasional work-related interaction with the general public. (R. 63). The VE reported the same jobs would still be available. (*Id*.). The ALJ also asked whether sedentary jobs exist with the same initial limitations but without an option to alternate between sitting and standing. (*Id*.). The VE found three different jobs available under the criteria. (R. 63-64). The ALJ asked if the same jobs exist with the added requirement of occasional work-related interaction with the general public. (R. 64). The VE testified only two of the same jobs would allow for the added requirement, but a new occupation would be available as well. (R. 64). Finally, the ALJ asked whether sedentary jobs exist with the same initial limitations but with the ability to alternate between sitting and standing at 45-minute intervals for a duration of five minutes while remain on task. (R. 65). The VE testified that no jobs exist within those limitations. (*Id*.).

### ii.    Medical Records

Plaintiff's primary care physician, Dr. Jeffrey C. Laubenthal, wrote in a clinical assessment that "[m]y patient suffers from chronic back pain that has begun to interfere with her activities of daily living … I am not optimistic that we can lower [her pain] to the point that she could resume her prior work duties." (Pl. Br. at 10; R. 356). Dr. Laubenthal's treating source statement indicates that he sees Plaintiff three to five times per year and that Plaintiff has been a part of his practice since 2001. (Pl. Br. at 5; R. 1425-426). Dr. Laubenthal also notes that Plaintiff's pain would interfere with her attention and concentration constantly throughout a typical workday. (R. 1426).

He estimates that Plaintiff can sit and stand/walk less than two hours in a typical workday with normal breaks and that Plaintiff would require being absent from work more than four days per month. (*Id.*). However, Dr. Laubenthal's evaluations indicate that Plaintiff is generally alert with normal thoughts and memory with no concerns pertaining to attention and concentration. (R. 1105-106, 1115, 1432). Further, he noted that Plaintiff has normal strength with painless lumbar range of motion and a normal gait, and that she is able to perform normal weight-bearing. (R. 1106, 1115).

Medical records indicate that Plaintiff has been prescribed a variety of different medications by treating physicians to manage her symptoms. (R. 383-89). Dr. Thomason at SpineCare Center of Tuscaloosa prescribed Plaintiff extended-release Morphine to manage her lower back and hip pain. (Pl. Br. at 3; R. 54-55). Plaintiff also takes Bystolic, Gabapentin, Klonopin, Lexapro, MS Contin, and Trazadone. (Pl. Br. at 3; R. 58-59). Plaintiff was treated with injections and nerve blocks for her lower back and hip pain. (Pl. Br. at 6; R. 1437-595).

Plaintiff was assessed by ATI Physical Therapy on April 30, 2020. A functional capacity evaluation found Plaintiff suffers from decreased lumbar range of motion, increased Gowers' sign and mechanical low back pain, decreased left lower extremity strength, left leg balance deficits, decreased tolerance for lower extremity tasks (*e.g.*, squatting, crouching, bending, stooping, and kneeling), and decreased tolerance for prolonged standing and walking. (R. 403-04, 1129-148). However, the evaluation concluded that Plaintiff is able "to safely work in the Light PDL for up to a 4-hour period with observed restrictions/limitations." (R. 404, 1148). Dr. Robert L. Ross, III, MPH from Bay Occupational Medicine, P.C., also performed a functional capacity evaluation of Plaintiff on September 15, 2020. (Pl. Br. at 6; R. 1150-165). As Dr. Ross stated in his report, "[i]t

is clear that even if [Plaintiff] returns to sedentary employment, this will not provide her with appropriate accommodations for her restrictions and limitations." (R. 1163).

### iii.    State Agency Physicians

In August 2020, a state agency physician completed a disability determination at the initial level and found Plaintiff is not disabled under applicable guidelines. (R. 86-101). The physician considered Plaintiff's impairments and reported that Plaintiff is limited to light, unskilled work. (R. 100). Further, the physician noted that, though Plaintiff cannot perform any of her previously held jobs, "evidence shows [Plaintiff is] able to carry out most activities." (R. 103). Thus, based on Plaintiff's age, education, and prior work experience, the physician determined Plaintiff is capable of performing certain types of work. (*Id.*).

In March 2021, another state agency physician completed a disability evaluation at the reconsideration level and found Plaintiff is not disabled under applicable guidelines. (R. 104-36). This physician noted that Plaintiff suffers from a number of impairments, some of which are severe. (R. 119). In particular, the physician determined Plaintiff's back and hip condition, anxiety and obsessive-compulsive disorders, depression, and attention deficit disorder are severe. (*Id.*). Nevertheless, the physician stated Plaintiff's hearing loss and obesity are not severe. (*Id.*). Thus, given Plaintiff's impairments, the physician reported Plaintiff is limited to light, unskilled work. (R. 132).

## II.    ALJ Decision

Under the Social Security Act, the Social Security Administration has developed a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a). Upon review, the ALJ is responsible for evaluating the evidence and making

determinations at each step. (R. 13). In this case, after careful consideration of the evidence, the ALJ determined Plaintiff is not disabled under Sections 216(i) and 223(d) of the Act. (R. 25).

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id.* § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. *Id.* § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id.* §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite her impairments. *Id.* § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth

and final step. *Id.* § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. *Id.* § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c).

Here, the ALJ first determined that Plaintiff has not engaged in any substantial gainful activity since her onset date of disability of February 28, 2020. (R. 14). *See* 20 C.F.R. § 404.1571. At the second step of her analysis, the ALJ acknowledged Plaintiff has several severe impairments, including "status post lumbar fusion at L5 to S1, status post left hip acetabuloplasty and labral tear repair, right ear hearing loss, left ear tinnitus, obesity, depression, anxiety, attention deficit disorder (ADD) and a history of alcohol abuse." (R. 14). *See* 20 C.F.R. § 404.1520(c). However, at the third step, the ALJ found that, though Plaintiff's impairments are considered severe under the regulations, Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 15). *See* C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. The ALJ explained:

> In making this determination, the undersigned has specifically considered listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.18 (Abnormality of a major joint(s) in any extremity), 2.07 (Disturbance of labyrinthine-vestibular function), 2.10 (Hearing loss not treated with cochlear implantation), 12.02 (Neurocognitive disorders), 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), 12.11 (Neurodevelopmental disorders) and SSR 19-2p (Evaluating Cases Involving Obesity) as well as other relevant Social Security Rulings (SSRs). . . .

(R. 15). The ALJ concluded, "the evidence does not demonstrate the criteria required under the listings." (*Id.*). The ALJ also specified that Plaintiff's mental impairments reach only moderate

limitations, failing to meet the requirement of "at least two 'marked' limitations or one 'extreme' limitation." (R. 17).

The ALJ then evaluated Plaintiff's RFC, considering Plaintiff's alleged impairments in addition to the entirety of evidence. (R. 19). The ALJ noted that Plaintiff's ailments "could reasonably be expected to cause the alleged symptoms," but Plaintiff's testimony as to the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*.). The ALJ found that Plaintiff's testimony about her ability to sit only thirty minutes, stand ten minutes, and walk eight minutes is inconsistent with Plaintiff's functional capacity evaluation indicating greater abilities. (R. 22). Plaintiff's testimony about her extreme level of pain in performing certain activities was also found inconsistent with the frequency with which she performed such activities. (*Id*.). The ALJ also determined Plaintiff's testimony about her sleep habits to be inconsistent with other evidence and unpersuasive. (*Id*.). Plaintiff testified during the hearing that she sleeps only five hours a night, but on an earlier occasion told one of her providers that she typically sleeps until noon. (*Id*.).

The ALJ also observed that although the record reveals Plaintiff's complaints of constant back pain that radiates to her pelvis and groin, examinations of Plaintiff show "no hip tenderness, normal lower extremity range of motion, normal hip range of motion, normal reflexes, normal strength in lower extremities, normal sensation, negative straight leg raise and normal ambulation with a normal gait." (R. 19). The ALJ found less optimal evidence in the record suggesting "lumbar tenderness, back spasms, decreased and painful lumbar range of motion, positive straight leg raise, mildly reduced hip strength and range of motion with a mild limp." (*Id*.). Regarding Plaintiff's tinnitus and hearing loss, the ALJ determined that the evidence generally shows normal ability to communicate and normal hearing, but with a diagnosis of tinnitus and right ear hearing loss. (R.

20). The ALJ cited diagnostic testing that corroborated these findings, revealing high frequency hearing loss in Plaintiff's right ear. (*Id.*). The ALJ found that Plaintiff's obesity had improved, as Plaintiff's BMI had decreased from 33 to 27. (*Id.*).

The ALJ also considered evidence regarding Plaintiff's mental health impairments. (*Id.*). She noted that the record reveals Plaintiff's complaints of depression, anxiety, poor concentration, insomnia, irritability, fatigue, hyperactivity, difficulty completing tasks, heart palpitations, and previous substance abuse. (*Id.*). However, the ALJ found the medical evidence generally indicates Plaintiff is "alert, properly groomed, pleasant and cooperative" with a normal mood, affect, insight, attention, concentration, thought process, and memory. (*Id.*). The ALJ also noted Plaintiff has an average IQ of 93. (*Id.*). Further, the ALJ acknowledged certain less optimal findings in the record, revealing Plaintiff was at times "overwhelmed, irritable, anxious and depressed with pressured speech, impaired insight, ruminating and circumstantial thought processes and difficulties with motor speech, simple attention and psychomotor speed, along with diagnoses of anxiety, ADD, depression, and history of alcohol abuse." (*Id.*).

The ALJ assessed the medical opinions in the record according to 20 C.F.R. § 404.1520c. She found the opinions of the state agency physicians persuasive, "as they noted [Plaintiff] could engage in less than light exertion work." (*Id.*). According to the ALJ, this conclusion is consistent with Plaintiff's functional capacity evaluation from April 2020, which determined Plaintiff is "able to perform light exertion work withstanding and walking tolerances of four hours with limited bending, twisting and stopping." (R. 21). However, as the ALJ mentioned, one state agency physician "noted some concerns . . . particularly with [Plaintiff's] right-hand grip that may limit its usefulness, as well as indications she had difficulties with lifting sixteen pounds over the course of testing at one point that would be more consistent with her working with less weight throughout

a normal workday." (*Id*.). The ALJ also acknowledged that the state agency physicians did not consider Plaintiff's left hip injury at the time, which subsequently resulted in surgery. (*Id*.). Since the surgery, the ALJ observed that the record evidence shows that Plaintiff suffers from reduced hip strength, reduced range of motion, and a mild limp, which is "inconsistent with light exertion work." (*Id*.). The state agency physicians also determined Plaintiff could understand simple tasks and would benefit from slower paced work, regular breaks, limited interaction with the public, and casual contact with coworkers and supervisors. (*Id*.). The ALJ found this determination to be generally supported by evidence in the record indicating Plaintiff's average intellect and normal attention, though other evidence indicates Plaintiff's ruminating thoughts and attention difficulties. (*Id*.).

The ALJ considered the opinions of Plaintiff's treating physicians, including Dr. Robert Ross, III and Dr. Jeffrey Laubenthal, but found both were unpersuasive. (R. 22). The ALJ rejected Dr. Ross's opinion because his "conclusions appear[ed] to be based on assumptions with no testing or evaluations to support them." (*Id*.). According to the ALJ, his opinions were also unsupported by evidence from other medical providers and inconsistent with Plaintiff's functional capacity evaluation. (R. 21). The ALJ rejected Dr. Laubenthal's opinion for similar reasons. That is, his opinion was "unsupported by his own evaluations" and inconsistent with Plaintiff's functional capacity evaluation and other treatment notes. (R. 22).

In light of the totality of the evidence, the ALJ concluded Plaintiff has the RFC to perform sedentary work[1] as defined in 20 C.F.R. § 404.1567(a), except Plaintiff can "occasionally climb ramps and stairs … never climb ladders, ropes or scaffolds … never balance as defined by DOT

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

… occasionally stoop … never kneel, crouch or crawl … [and] never be exposed to excessive vibration…." (R. 18). Plaintiff should "not work in very loud noise environments as defined by DOT … avoid concentrated exposure to extreme temperatures … never work at unprotected heights or with hazardous machinery … [and] never work on uneven terrains…." (*Id*.). However, Plaintiff can "understand, remember, carry out and make simple, routine and repetitive instructions, tasks and decisions consistent with unskilled work … maintain concentration, persistence and pace for two-hour periods throughout a normal workday for such tasks … occasionally handle workplace changes … perform no pushing of leg controls with her left lower extremity … [and] can have occasional work-related interactions with general public." (*Id*.). So, at the fourth step of the inquiry, the ALJ determined Plaintiff is unable to perform any past relevant work in light of her RFC and persuasive evidence in the record. (R. 23).

At the fifth and final step, the ALJ considered Plaintiff's "age, education, work experience, and residual functional capacity" and found several jobs existing "in significant numbers in the national economy" that Plaintiff can perform. (R. 24). *See* 20 C.F.R. §§ 404.1569 and 404.1569(a).

## III.    Plaintiff's Argument for Reversal

Plaintiff argues that the ALJ's findings are not supported by substantial evidence, are not based on proper legal standards, and fail to comply with Social Security Regulations. (Pl. Br. at 8). Plaintiff claims the ALJ erred by failing to properly consider the opinions of her treating physician, Dr. Laubenthal. (Pl. Br. at 8). Plaintiff acknowledges the Social Security Administration's departure from the treating source rule but argues the ALJ must first identify a "genuine inconsistency" in the treating physician's opinions and other medical findings before rejecting the treating physician's opinions as inconsistent with other evidence in the record. (Pl.

Br. at 10). Plaintiff cites *Simon v. Commissioner, Social Security Administration*, 1 F.4th 908, 918 n.4 (11th Cir. 2021), in support of her claim. (Pl. Br. at 10).

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V.    **Discussion**

Plaintiff contends that the ALJ's findings and ultimate disability ruling are not based on proper legal standards, fail to comply with Social Security Regulations, and are not supported by substantial evidence. (Pl. Br. at 8). This court first discusses whether the ALJ failed to apply the proper legal standards, and particularly whether the ALJ applied the wrong legal standards in finding Plaintiff's treating physician's opinions unpersuasive. This court then discusses whether the ALJ's findings are supported by substantial evidence.

a.    **Whether the ALJ Applied the Wrong Legal Standards in Finding Plaintiff's Treating Physician's Opinions Unpersuasive**

Plaintiff claims the ALJ committed error by failing to properly consider the opinions of her treating physician, Dr. Laubenthal. (Pl. Br. at 8-9). More specifically, Plaintiff alleges that the ALJ "cherry-picked" certain findings of Dr. Laubenthal from the record, "while ignoring the majority of the records which support his conclusions." (Pl. Br. at 9). Plaintiff also claims the ALJ was required to identify a "genuine inconsistency" in the treating physician's opinions with other medical determinations in the record before finding the opinions unpersuasive. (Pl. Br. at 10). Plaintiff cites *Simon v. Commissioner, Social Security Administration*, 1 F.4th 908, 918 n.4 (11th Cir. 2021), in support of this claim. (Pl. Br. at 10).

Plaintiff also notes Dr. Laubenthal "treated [her] for many years and is, therefore, very well aware of [her] various medical problems and the limitations these medical problems place upon [her]." (Pl. Br. at 9). Plaintiff acknowledges the Social Security Administration's elimination of the treating physician rule but argues the ALJ should still weigh medical opinions in the record "in light of the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, and the extent of the treatment relationship." (Pl. Br. at 10).

14

The regulations state that an ALJ should not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The regulations also stipulate that an ALJ's most important considerations in evaluating persuasiveness of medical opinions are supportability[2] and consistency.[3] *Id.* § 404.1520c(a). Secondary considerations include the treatment relationship, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, specialization, and other factors. *Id.* § 404.1520c(c)(1)-(5). Although supportability and consistency are the most important factors in assessing a medical source's opinion, an ALJ may (but is not required to) explain how the remaining factors were considered in the decision. *Id.* § 404.1520c(b)(2).

### i.       Supportability and Consistency

Plaintiff's argument that the ALJ "cherry-picked" evidence from the record to negate Dr. Laubenthal's opinions is off the mark. This court may not reweigh the facts or reexamine the evidence. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Instead, this court's role is limited to addressing whether the ALJ applied proper legal standards in evaluating Dr. Laubenthal's opinions. The court finds that the ALJ properly considered the medical opinions of state consultants, as well as Plaintiff's treating physicians, in determining Plaintiff's RFC and did so in a manner consistent with 20 C.F.R. § 404.1520c. (R. 21-22). The ALJ evaluated the opinions

---

[2] Supportability as explained in the regulation: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[3] Consistency as explained in the regulation: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

of Plaintiff's primary care physician, Dr. Laubenthal, in light of his own previous assessments of Plaintiff, other functional capacity evaluations, and the record evidence. (R. 22, 100, 132).

The ALJ found the opinions of Dr. Laubenthal inconsistent with and unsupported by other medical evidence in the record and, thus, unpersuasive according to § 404.1520c(c)(2). (R. 22). Dr. Laubenthal opined that Plaintiff's pain would interfere with her attention and concentration constantly throughout a typical workday, limit her ability to sit and stand/walk to less than two hours, and require her to be absent from work more than four days per month. (R. 1426). However, his opinions are inconsistent with the results of Plaintiff's functional capacity evaluation dated April 30, 2020. (R. 403-04, 1148).

The functional capacity evaluation notes that Plaintiff suffers from decreased lumbar range of motion, increased Gowers' sign and mechanical low back pain, decreased left lower extremity strength, left leg balance deficits, decreased tolerance for lower extremity tasks (*e.g.*, squatting, crouching, bending, stooping, and kneeling), and decreased tolerance for prolonged standing and walking. (R. 403-04, 1129-148). However, the functional capacity evaluation concluded Plaintiff is able "to safely work in the Light PDL for up to a 4-hour period with observed restrictions/limitations." (R. 404, 1148). Dr. Laubenthal's opinions about Plaintiff's disabilities are also inconsistent with his own treatment notes, which indicate Plaintiff is generally alert with normal thoughts and memory and there were no concerns pertaining to attention and concentration. (R. 1105-106, 1115, 1432). His examinations of Plaintiff further concluded Plaintiff is of normal strength, has painless lumbar range of motion and a normal gait, and is able to perform normal weight-bearing. (R. 1106, 1115).

The ALJ's explanation of why she found Dr. Laubenthal's opinions unpersuasive can hardly be deemed "cherry-picking." In making this claim, Plaintiff fails to cite any specific,

objective medical records supporting Dr. Laubenthal's opinions. Instead, she generally cites Plaintiff's own repeated complaints of pain as well as other treating clinics' "observations of [the] limiting effects of her conditions." (Pl. Br. at 9). To be sure, the ALJ recognized these limiting effects in her determination of Plaintiff's RFC. (R. 18).

Furthermore, the ALJ articulated exactly how she evaluated Dr. Laubenthal's specific medical opinion about Plaintiff's RFC according to the opinion's supportability and consistency, and with 20 C.F.R. § 404.1520c(b)(2). (R. 22). Therefore, this court cannot conclude that the ALJ's analysis is insufficient according to the relevant regulations.[4]

Plaintiff's argument that the ALJ must identify a genuine inconsistency in Dr. Laubenthal's opinion and the record as a whole is also off target. Plaintiff cites *Simon v. Commissioner, Social Security Administration*, 1 F.4th 908, 918 n.4 (11th Cir. 2021), claiming that the ALJ must point to something more than "positive or neutral observations that create, at most, a trivial and indirect tension" before discounting Dr. Laubenthal's opinion. (Pl. Br. at 10-11). However, the *Simon* case cited by Plaintiff is no longer good law. The Eleventh Circuit withdrew its June 9, 2021 decision and replaced it with a new decision on August 12, 2021. *See Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094 (11th Cir. 2021). In its new decision, the Eleventh Circuit noted that Simon filed his disability claim in March 2015, two years before the Social Security Administration removed its treating physician rule. *Simon*, 7 F.4th at 1104 n.4. The treating physician rule required ALJs "to give substantial or considerable weight to a treating physician's opinions absent good cause." *Id.* Thus, even the new *Simon* decision is inapplicable in this case as

---

[4] Plaintiff essentially asks this court to reconsider the entirety of medical evidence in search of those records which support and corroborate Dr. Laubenthal's opinion that Plaintiff is disabled. That task is beyond the scope of this court's inquiry. *See Martin*, 894 F.2d at 1529.

Plaintiff filed for disability benefits under the new regulatory scheme, not the one at issue in *Simon*. *See* 20 C.F.R. § 404.1520c.

### ii.        Secondary Factors

Plaintiff's argument that the ALJ failed to properly consider the length and extent of the treating relationship with Dr. Laubenthal is also unconvincing for several reasons. Plaintiff seems to suggest that the length and extent of her treating relationship, as well as the other factors outlined in § 404.1520c(c)(1)-(5), require the ALJ to give more weight to Dr. Laubenthal's medical opinions. (Pl. Br. at 10). However, the relevant regulations instruct just the opposite. An ALJ should not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Further, as noted above, the ALJ's most important considerations in weighing medical opinions are supportability and consistency. 20 C.F.R. § 404.1520c(a). When the ALJ found Dr. Laubenthal's opinions neither supportable nor consistent with the record as a whole, the secondary factors became less relevant. Plaintiff, however, stresses the importance of these secondary factors without providing any evidence to suggest the ALJ failed to consider them. (Pl. Br. at 10). In addition, the ALJ is not required to explain how she considered the additional factors in making her decision about the persuasiveness of Dr. Laubenthal's opinion. *See* 20 C.F.R. § 404.1520c(b)(2). Thus, this court cannot conclude without any evidence whatsoever that the ALJ failed to properly consider the secondary factors outlined in  20 C.F.R. § 404.1520c(c)(1)-(5).

### b.        Whether the ALJ's Findings are Supported by Substantial Evidence

Plaintiff claims the ALJ's findings and ultimate disability ruling are not supported by substantial evidence. (Pl. Br. at 8). However, this court finds substantial evidence in the record to

support the ALJ's decision and finds the ALJ's decision reasonable in light of such evidence. ATI Therapy assessed Plaintiff in April 2020 and concluded Plaintiff is able "to safely work in the Light PDL for up to a 4-hour period with observed restrictions/limitations." (R. 404, 1148). A state agency physician also considered Plaintiff's impairments and determined Plaintiff is capable of light, unskilled work. (R. 100). The physician also stated that while Plaintiff cannot perform any of her previously held jobs, the record evidence "shows [Plaintiff is] able to carry out most activities." (R. 103). Another state agency physician found Plaintiff suffers from a number of impairments, some of which are severe, including Plaintiff's back and hip condition, anxiety and obsessive-compulsive disorders, depression, and ADD. (R. 119). However, despite Plaintiff's severe impairments, that physician reported Plaintiff is capable of light, unskilled work. (R. 132).

Plaintiff's testimony before the ALJ and her general allegations of pain are also inconsistent with the functional capacity evaluation conducted by ATI Therapy, as well as the determinations of state agency physicians. (R. 100, 132, 404, 1148). During her hearing before the ALJ, Plaintiff testified that she could stand no more than ten minutes at a time, walk no more than eight minutes at a time, and sit no more than thirty minutes at a time. (R. 53). However, both ATI Therapy and state agency physicians determined Plaintiff, though limited in abilities, is able to participate in light, unskilled work. (R. 100, 132, 404, 1148). Plaintiff testified she experiences extreme levels of pain when performing certain activities, but she still carries out those activities weekly. (R. 53). Plaintiff also testified that she sleeps only five hours per night, but on another occasion told one of her providers that she typically sleeps until noon. (R. 22). Based on the evidence, the ALJ reasonably found that Plaintiff's testimony as to the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 19).

The ALJ properly considered Plaintiff's medically determinable limitations in light of the evidence in the record. Undoubtedly, Plaintiff suffers from a number of ailments that limit her daily activities. However, these limitations are reflected in the ALJ's findings and her determination of Plaintiff's RFC. Further, a reasonable person would accept the evidence relied on by the ALJ as valid to support the ALJ's conclusion. *See Martin*, 894 F.2d at 1529. Thus, this court finds that the ALJ's ultimate decision is supported by substantial evidence.

## VI.     Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this April 19, 2023.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE